IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) |
| | ) |
| NATIONAL LABOR RELATIONS BOARD, | ) ) |
| Defendant. | ) ) ) |

Case No. 1:15-CV-9

Judge Amy Berman Jackson

**NATIONAL LABOR RELATIONS BOARD'S REPLY TO OPPOSITION OF PLAINTIFFS BAKER DC, LLC AND ITS EMPLOYEES TO DEFENDANT'S DISPOSITIVE MOTIONS**

Pursuant to this Court's Order dated April 22, 2015 [ECF No. 31], the National Labor Relations Board ("NLRB" or "Board") submits this reply in order to respond to any new arguments raised in the Opposition of Plaintiffs Baker DC, LLC and Its Employees To Defendant's Motion(s) [ECF No. 32] ("Pl. Opp.").

**I.     All of the Plaintiffs' facial challenges to the Rule's discretionary aspects remain unripe because the Board has yet to crystallize its position and because all such challenges should be resolved through the normal course of NLRA review.**

Plaintiffs Baker DC, LLC, *et al.* ("Plaintiffs") have proffered evidence pertaining to the Board's ongoing representation case (No. 05-RC-150123) in which Baker is the Employer, as well as to the Board's implementation of the new Rule since April 14, 2015. They suggest that the preliminary implementation of part of the Rule as to Baker, as well as to "more than 140 employers" across the country, renders the entire Rule ripe for facial review. Pl. Opp. at 4, 5. The plaintiffs err.

A challenge to a discretionary rule is ripe when "an administrative decision has been formalized and its effects felt in a concrete way *by the challenging parties*." *Sprint Corp. v. FCC*,

331 F.3d 952, 957 (D.C. Cir. 2003) (quoting *Nat'l Park Hospitality v. Dep't of the Interior*, 538 U.S. 803[, 807-08] (2003)) (emphasis added, pin cite omitted in original); *see also Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 165 (explaining that plaintiffs, whose facial challenge was unripe, could ultimately secure review by declining to cooperate with administrative inspection and challenging agency action through the administrative review process). Once the agency has "crystallized its position" as to the plaintiff, a challenge is ripe. *Sprint*, 331 F.3d at 957.

*Toilet Goods*, however, explicitly contemplated that such a challenge would be brought *through the agency process*. 387 U.S. at 165. The Supreme Court saw particular benefits to be gained from such a course of action: "the factual basis of the [case-specific] order will certainly be aired and [] more light may be thrown on the [agency's] statutory and practical justifications for the regulation." *Id.* at 166. So where "the agency could grant the requested relief and thereby obviate the need for judicial review," the plaintiff should ordinarily be required to exhaust that avenue for relief. *Media Access Project v. FCC*, 883 F.2d 1063, 1070 (D.C. Cir. 1989). Numerous cases illustrate the reasonableness of deferring as-applied review of discretionary decisions until after an agency has been found to have "crystallized its position," the plaintiffs had no remedies left to exhaust, and review is thereafter provided through the ordinary post-agency review procedures that Congress crafted for that purpose.[1] Congress has made perfectly clear what the ordinary process for obtaining review of Board representation cases is: a technical refusal to bargain, followed by a summary unfair labor practice adjudication. *Boire v. Greyhound Corp.*, 376 U.S. 473, 477-79 (1964).

---

[1] *E.g., Better Government Association v. Department of State*, 780 F.2d 86, 92–96 (D.C. Cir. 1986) (agency made final determination that plaintiffs were ineligible for FOIA fee waiver, then reversed its decision and granted waiver *after* suit filed challenging that decision); *In Re Polar Bear Endangered Species Act Listing And Section 4(D) Rule Litigation (Safari Club Int'l v. Jewell)*, 720 F.3d 354, 358-60 (D.C. Cir. 2013) (agency administratively closed applications for permits to import polar bear trophies and sent written explanation to plaintiffs).

Here, it is indisputable that the Board may yet decide in favor of Baker if it should claim

that Regional Director Charles Posner ("the Regional Director") has committed some legal error.

Because the Board could still determine that Baker's challenge to any given exercise of

discretion by the Regional Director is meritorious, based on application of the Rule and the

Board's sound discretion in the area of representation proceedings, it cannot be said that the

Board has "crystallized its position." If the union wins the election, and if the Board later finds

that Baker has unlawfully refused to bargain, then and only then will Baker's challenge will be

ripe for judicial review in the court of appeals. 29 U.S.C. § 160(e), (f).

Similarly, the fact that the Rule has currently been in effect for a few weeks does not alter

the proper ripeness analysis as to key portions of Plaintiffs' facial challenge. Nothing in *Sprint*—

the sole case cited by Plaintiffs here—suggests that a facial challenge to discretionary regulatory

provisions becomes ripe once those provisions take effect. Rather, the D.C. Circuit held there

that

> the success of [Sprint's] challenge . . . will depend in large part on the particular
> specialized overlays that the Commission might approve in the future. In light of
> the Commission's enumeration of the factors it will consider in evaluating a
> specialized overlay proposal . . . , the Commission might approve a proposal in a
> manner such that Sprint's concerns may never be realized.. . . By declining to
> decide Sprint's general challenge now, we preserve our own ability to decide
> intelligently, not only Sprint's challenge but any future challenges to specific
> specialized overlay proposals.

331 F.3d 958 (citations and quotations omitted).

Keeping in mind these considerations, the pertinent questions remain: has there been

enough factual development of the contours of the Rule's discretionary provisions for a court to

be able to find, as required by *Reno v. Flores*, 507 U.S. 292, 301 (1993), that there is "no set of

circumstances" in which those provisions may be lawfully applied? And does postponing review

to await such developments threaten any hardship? Contrary to Baker's claims, the answer is

"no."  All Baker has pointed to are a handful of preliminary decisions by a single Regional

Director that have not yet even been appealed to, much less ruled upon by, the Board, and that

bind precisely nobody to take or refrain from any action. In these circumstances, *Sprint* teaches

that when considering premature facial challenges to discretionary regulatory provisions, which

may be applied in a variety of ways, courts' "own ability to decide intelligently" is best preserved

by finding such challenges to be unripe.

**II.**  ***Leedom v. Kyne* does not warrant the exercise of jurisdiction over Plaintiffs' attempted as-applied challenge.**

The Supreme Court's decision in *Leedom v. Kyne*, 358 U.S. 184 (1958), represents a

separate, insurmountable jurisdictional hurdle to district court review of Plaintiffs' as-applied

challenge. As the Board explained previously in its oppositions to Baker's Motion for a

Temporary Restraining Order (Case No. 15-cv-571(ABJ) [ECF No. 8] ("NLRB First TRO

Opp"), at 6-7; [ECF No. 14] ("NLRB Second TRO Opp"), at 4-6), *Leedom* defines the

exceptionally narrow circumstances in which district courts may exercise emergency review of

Board action under 28 U.S.C. § 1331.

Plaintiffs now seek to distinguish *Leedom* by claiming (Pl. Opp. at 5 n.3) that this Court

"has federal jurisdiction to consider all of the plaintiffs' legal challenges to the new Rule under

the NLRA and the APA." But the sole jurisdiction of district courts under the NLRA is to enforce

subpoenas and to hear preliminary injunction cases brought by the Board, 29 U.S.C. §§ 160(j)

and (l), 161(2), and the APA is *not* a jurisdictional statute, *Califano v. Sanders*, 430 U.S. 99, 105

(1977). *Leedom*, accordingly, is the only pertinent mechanism through which district courts may

exercise judicial review of the conduct of individual Board representation cases.

"[I]n order to justify the exercise of *Leedom* jurisdiction, a plaintiff must show, *first*, that

the agency has acted in excess of its delegated powers and contrary to a specific prohibition

4

which is clear and mandatory, and, *second*, that barring review by the district court would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights." *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006). Baker's newly submitted evidence provides no basis for concluding that it satisfies either of these requirements.

### A.    Plaintiffs have full access to meaningful judicial review.

Most of Plaintiffs' argument here seeks to reopen the issue of the adequacy of ordinary judicial review by presenting new evidence of claimed irreparable harm. Such evidence does not warrant reconsideration of this Court's opinion, Case No. 15-cv-571 (ABJ) [ECF No. 22] ("Mem. Op."), holding that putting the rule into effect would cause no irreparable harm. Ordinary review will be fully adequate.[2]

Baker briefly alleges that the process of preparing for the representation hearing was "burdensome and time consuming." Pl. Opp. at 2; Declaration of Erik Hult [ECF No. 32-1] ("Hult Dec."), ¶2. But the affidavit should be excluded, because if it is meant to be pertinent to Baker's as-applied challenge, these costs have already been incurred, and, in any event, are

---

[2] Although the co-plaintiff employees lack Baker's ability to compel as-applied judicial review by precipitating a refusal-to-bargain unfair labor practice charge, *Boire v. Greyhound Corp.*, 376 U.S. 473, 477-79 (1964), there is no reason to think Baker will not continue to protect their interests, just as other employers have traditionally done in similar circumstances. *E.g., NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969); *Clarence E. Clapp*, 279 NLRB 330, 330-31 & n.1 (1986). Furthermore, with respect to the employees' claim that they are injured by the Rule's requiring disclosure to the union of email and cell phone information that they have shared with Baker, that claim is ripe for review by this court on the complainants' facial challenge. In that respect, this case is now in a posture analogous to that of *Wyman Gordon*: here, as there, the issue of the reasonableness of the Board's disclosure rule is presently before the Court for decision.

garden variety litigation costs, which cannot, as a matter of law, render review inadequate. See

NLRB First TRO Opp., at 12 n.18.[3]

Second, Plaintiffs note that the Regional Director, at the representation case hearing,

directed the hearing officer to exclude evidence of the supervisory status of some 13 percent of

the petitioned-for unit. Pl. Opp. at 6; Hult Dec. ¶5. Plaintiff employees allege that, as a result,

they "will be chilled" by their indeterminate supervisory status. Pl. Opp. at 6. The nature of this

"chill" is unclear, given that if the Regional Director directs an election, the plaintiff employees

will be entitled to vote using the challenged-ballot procedure. The Board found in the instant

rulemaking no evidence of "chill" in past elections where a similar protocol has been followed.

79 Fed. Reg. 74308, 74390 (Dec. 15, 2014). The proper time and place to present any evidence

of "chill" would be in the normal course provided by the NLRA.

In any event, parties under the NLRA *always* act on incomplete information about how

supervisory status issues will be resolved. NLRB Memorandum of Points and Authorities [ECF

No. 22] ("NLRB Mem."), at 25. As this case shows, even if the Regional Director had

determined to resolve their status, at least 27 days of the election period (April 14 through May

11) would already have elapsed. *Cf.* 79 Fed. Reg. at 74389 (explaining that supervisory-status

determinations will inevitably come after a substantial part of the election period has elapsed).

And such a ruling by the Regional Director would provide no safe harbor against the possibility

that the employees might ultimately be held to be supervisors by the Board or a reviewing court.

NLRB Reply Memorandum of Points and Authorities [ECF No. 27] ("NLRB Reply"), at 16.

---

[3] Neither can Baker attempt to supplement a facial challenge to the Rule with Mr. Hult's May 1, 2015 affidavit [ECF No. 32-1] because, for purposes of judicial review, this Court has repeatedly held that agency rulemaking must be evaluated on the administrative record before the agency at the time of the final rule's issuance. *See, e.g.*, *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (record should contain "neither more nor less" than what was before the agency); *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005) (same).

Finally, Plaintiffs' recycled claim that the mere disclosure of personal information will cause them "imminent" irreparable harm, Pl. Opp. at 6-7, raises no new allegations not already addressed by this Court's prior order. Mem. Op. at 13.

      **B.**    **Plaintiffs cannot show that any action yet taken has been contrary to the plain language of the NLRA or the Constitution.**

The second prong of *Leedom* requires the district court to find that the Board has clearly violated the NLRA or the Constitution. NLRB First TRO Opp., at 6-7. Plaintiffs have put forth some arguably new merits allegations, which we address briefly.

Plaintiffs claim that the Regional Director's deferral of litigation of the supervisory status of Baker foremen, "violates the plain language of the Act," Pl. Opp. at 6, but fail to cite the statutory provision allegedly being violated.[4] Plaintiffs also resort to "legislative history" and "the Board's own [now overruled] statutory precedent," but even assuming such matters are relevant to showing a clear statutory violation, legislative history is of little (if any) utility here. The Board has clearly explained why it overturned its prior decisions, NLRB Mem. at 20-25; NLRB Reply at 9-10, which is all that is required. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Plaintiffs' cursory reference to "due process" has been previously addressed by the Board. See NLRB Mem. at 14-15. Thus, under *Leedom*, resolution of the merits of these issues must await a final Board order within the meaning of Section 10 of the NLRA.

Plaintiffs' remaining allegations--regarding the mandated disclosures of an initial list of employees' names, work locations, and shifts in the Statement of Position form and the

---

[4] If Baker is alluding to Section 9(c)(1)'s requirement of an "appropriate hearing," 29 U.S.C. § 159(c)(1), as explained by the Board, NLRB Mem. at 13; NLRB Reply at 7, nothing about that bare phrase resolves the question of whether deferring litigation on this particular issue is "appropriate."

requirement that of later providing of a voter list with additional contact information-- raise no

issues that have not already been addressed in the prior filings of the parties.[5]

Respectfully submitted,

/s/ Nancy E. Kessler Platt
NANCY E. KESSLER PLATT
*Deputy Assistant General Counsel for*
*Contempt, Compliance, and Special*
    *Litigation*

DAWN L. GOLDSTEIN
KEVIN P. FLANAGAN
*Supervisory Attorneys*

PAUL A. THOMAS
DAVID H. MORI
*Attorneys*

National Labor Relations Board
1099 14th Street, NW, Suite 10700
Washington, D.C. 20570
Phone: (202) 273-2937
Fax: (202) 273-4244
E-mail: Nancy.Platt@nlrb.gov
D.C. Bar No. 425995

Dated: May 8, 2015
Washington, D.C.

---

[5] We do note, however, that although Baker now claims that this initial disclosure necessarily revealed "confidential and proprietary" information (Pl. Opp. at 2), it made no such allegation in its initial complaint, motion for temporary restraining order, or even its amended complaint (Case 1:15-cv-00571-ABJ, Doc. 12).